**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DINAN AND COMPANY LLC, | No. CV-08-147-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| FRONTENAC COMPANY LLC, | |
| Defendant. | |

Pending before the Court are the Motion for Summary Judgment of Defendant Frontenac Company LLC ("Defendant" or "Frontenac") (Doc. #14) and the Cross Motion for Summary Judgment of Dinan and Company LLC ("Plaintiff" or "Dinan") (Doc. #26). The Court now rules on those Motions.

**I.     FACTUAL BACKGROUND**

This case is a breach of contract action arising out of a finder's fee agreement ("Authorization Agreement" or "Agreement") entered into by Plaintiff Dinan and Defendant Frontenac. (Complaint, Doc. #1.) Defendant Frontenac is a private equity firm that raises funds to acquire companies and to operate them after acquisition. (Defendant's Separate Statement of Facts In Support of Its Motion for Summary Judgment ["DSOF"] ¶ 1.) Frontenac identifies potential acquisitions through a variety of sources including investment banks and "finder" entities such as the Plaintiff in the instant matter. (DSOF ¶ 2.)

In early September 2006, Frontenac began seeking to acquire a company in the water or waste water industry. (DSOF ¶ 3.) Through its managing director, Walter Florence, Frontenac entered into an agreement with Dinan under which Dinan was to identify companies in the water or waste water industry that were available for acquisition and to introduce those companies to Frontenac. (DSOF ¶ 5.) Under the Agreement, Frontenac was to pay Dinan a commitment fee of five thousand dollars per month. (DSOF ¶ 6.) In addition to the commitment fee, Dinan was eligible, under certain circumstances, to receive a contingent fee provided that Frontenac acquired a company in the waterworks industry that Dinan introduced to Frontenac. (DSOF ¶¶ 7,8.)

The parties' Agreement sets forth the various circumstances under which Dinan would not be eligible to receive the aforementioned contingent fee. For example, section 2(d)(3) of the Agreement provides:

> In the event that a Prospect has engaged an investment bank or other intermediary to represent the prospect and [Frontenac] has received prior notice/memorandum from such investment bank or intermediary or other Prospect representative prior to Dinan's introduction of [Frontenac], or [Frontenac] would otherwise have been contacted or was in the process of being contacted (e.g., [Frontenac] was on a potential buyer or investment list), no contingent fee will be paid to Dinan.

(DSOF ¶ 8; Plaintiff Dinan's Statement of Material Undisputed Facts ["PSOF"], Doc. #27, Attach. 8, ¶ 15.)

Frontenac ultimately acquired a company in the waterworks industry – Sigma Corporation ("Sigma") – in October 2007. (DSOF ¶ 19.) Sigma had engaged an investment bank – McGladrey Capital Markets LLC, formerly known as RSM Equico ("McGladrey") – for the purpose of creating a list of potential buyers interested in acquiring Sigma and contacting those potential buyers on Sigma's behalf. (DSOF ¶ 9, PSOF ¶ 9.) Frontenac asserts that McGladrey identified Frontenac as a potential buyer based on its prior dealings with Frontenac as well as other internal factors that led McGladrey to believe that Frontenac would be interested in acquiring Sigma. (DSOF ¶ 13.) Frontenac asserts that Brian Boyle, a senior managing director at McGladrey, intended to and ultimately did contact Frontenac

1  about acquiring Sigma. (DSOF ¶¶ 14-17.) Frontenac maintains the initial discussion between
2  McGladrey and Frontenac regarding Sigma occurred as early as late September or early
3  October 2006 when Mr. Boyle mentioned a potential acquisition in the waterworks industry
4  during the course of discussing another transaction with Walter Florence. (DSOF ¶ 15-16).
5  Dinan, however, maintains that it was responsible for introducing Sigma to Frontenac as a
6  prospect in November 2006. (PSOF ¶ 23.) The parties in this case now dispute whether,
7  under the terms of the Authorization Agreement, Dinan is entitled to a contingent fee as the
8  result of Frontenac's acquisition of Sigma.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most

1 favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### III. ANALYSIS

#### A. FRONTENAC'S MOTION FOR SUMMARY JUDGMENT

Dinan alleges that Frontenac breached the parties' Authorization Agreement when it failed to pay Dinan a $1,960,000 finder's fee resulting from Frontenac's acquisition of Sigma Corporation. It is elemental that in order to establish a claim for breach of contract, a plaintiff must establish offer, acceptance, performance of the contract by the plaintiff, breach of the contract by defendant, and damages. *See Best Western Int'l v. Patel*, 523 F. Supp. 2d 979, 988-989 (D. Ariz. 2007)(citations omitted). In order to establish its breach of contract action here, Dinan must show that Frontenac was required to pay Dinan a $1,960,000 finder's fee under the terms of the parties' Authorization Agreement and that it failed to do so.

Frontenac asserts that, under the plain language of the parties' Agreement, it was not required to pay a finder's fee to Dinan. Frontenac relies specifically on language in the parties' Agreement under Section 2(d)(3) which states that Dinan would not be entitled to a contingent fee if: (1) the Prospect engaged an investment bank or other intermediary to represent the Prospect, and (2) Frontenac either (a) received prior notice/memorandum from the investment bank or other Prospect representative prior to Dinan's introduction of Frontenac **or** (b) would otherwise have been contacted or was in the process of being contacted by the Prospect's investment bank or other representative. Frontenac argues that Dinan is not entitled to a contingent fee here because two events occurred: (1) Sigma engaged an investment bank, and (2) Sigma's investment bank, McGladrey, would have contacted or was in the process of contacting Frontenac. (Defendant's Motion for Summary Judgment ["Motion"], Doc. # 14, p. 5.)

Here, there is no dispute between the parties that the prospect – Sigma – engaged McGladrey to represent it. (DSOF ¶ 9, PSOF ¶ 9.) Indeed, on September 18, 2006, McGladrey sent a letter to Sigma confirming their engagement as Sigma's investment bank. (Id.) Therefore, the case – and the Motion before this Court – hinge on the second portion

- 4 -

of Section 2(d)(3) – whether McGladrey would have contacted, or was in the process of contacting, Frontenac regarding the potential acquisition of Sigma. This Court finds the undisputed evidence demonstrates that McGladrey would have contacted Frontenac regarding Sigma and ultimately did so.

In support of its position, Frontenac cites to the deposition testimony of Brian Boyle – a senior member of McGladrey involved with the Sigma deal. Mr. Boyle stated unequivocally in his deposition that, as of October 2006, McGladrey had identified Frontenac as a potential buyer for Sigma, was therefore in the process of contacting Frontenac regarding Sigma, and ultimately did contact Frontenac about Sigma. (DSOF ¶¶ 12-17; Defendant's Additional Separate Statement of Facts ["DASOF"] ¶ 5, Doc. #35; Deposition of Brian Boyle, Doc. #27, Attach. 4, pps. 91-94, 96, 109-110.) Given that, in his position as a senior member of McGladrey, Mr. Boyle was involved in finding potential entities to acquire Sigma, the Court agrees that Mr. Boyle is in the unique position of having knowledge about his intentions to contact Frontenac and his actions regarding the same.

Aside from suggesting that Mr. Boyle's testimony and affidavit were inappropriately induced – assertions this Court will address *infra* – Plaintiff cannot and does not point to any evidence to dispute Mr. Boyle's testimony. (Plaintiff's Reply to Defendant's Additional Separate Statement of Facts ["PRDASOF"], Doc. #39, Attach. 1, ¶¶ 5-8.) Mr. Boyle's testimony is further supported by the testimony of Frontenac's managing director, Walter Florence, who also testified that, during discussions between McGladrey and Frontenac regarding another transaction in late September or early October 2006, McGladrey mentioned that it had a client in the waterworks industry that was looking for a buyer. (Deposition of Walter Florence, Doc. #27, Attach. #3, pps. 35-36.) Although Mr. Florence testified that McGladrey did not name the client at that time, McGladrey did identify the company in scope and profile and mentioned that it would be an ideal fit as an acquisition for Frontenac. (Id.) Mr. Boyle's testimony that McGladrey would have contacted Frontenac regarding Sigma and was in the process of doing so is further supported by the undisputed fact that a prior business relationship existed between McGladrey and Frontenac. (DSOF ¶

- 5 -

11, PSOF ¶ 20.) Even evidence offered by Dinan in support of its opposition to Frontenac's Motion appears to concede that the Sigma deal was "a deal [Frontenac] would have otherwise seen." (Exhibit A to Declaration of M. Dinan, Doc. #27, Attach. 6, p. 30:16-19.)

To the extent Plaintiff attempts to create a fact issue needed in order to defeat summary judgment by arguing that Mr. Boyle's affidavit was induced or his testimony recanted, this Court is not persuaded. The Court has reviewed the deposition testimony of Mr. Boyle for some indication that Mr. Boyle either materially changed or recanted his testimony or affidavit or called into question the veracity of his statements and finds neither.

The Court does note, however, that Plaintiff has taken certain liberties with its characterization of the record, blurring the line between argument and fact. For instance, in paragraph 72 of Plaintiff's Statement of Material Undisputed Facts, Plaintiff states that Florence "told Boyle that Frontenac's counsel . . would be contacting him (Boyle) and to do whatever he could to help Frontenac to avoid having to pay a fee to Dinan." (PSOF ¶ 72.) Boyle's actual cited testimony, however, was only that Florence "told [him] about the claim, thought it had no merit," told him he thought he might be deposed, and asked him to "do what [he could] to help out." Paragraph 73 of Plaintiff's Statement of Facts similarly contains argument, factually unsupported allegations, conclusory statements, and questionable inferences from the evidence of record. (PSOF ¶ 73.) This Court does not approve of Plaintiff's counsel's liberties with the facts and his apparent disregard for the rules that require a party's statement of facts to be free of argument or conclusion. Although this Court has the discretion to strike such statements, such action is unnecessary at this juncture given the Court's disposition of the case on the merits.[1] *See Montoya v. Giusto*, Civ.

---

[1] The Court also notes that Plaintiff's briefing falls short of meeting other requirements of the local rules. Among other things, Plaintiff at times fails to refer to a specific admissible portion of the record to support the facts relied upon in opposing Frontenac's Motion. LRCiv 56.1(b)(each fact "shall refer to a specific admissible portion of the record where the fact finds support"). If the papers filed by a party opposing a summary judgment motion fail to either cite to materials in the court's record or cite to materials not included in the court's record, the court is not required to either scour the entire

No. 02-446-JE, 2004 U.S. Dist. LEXIS 29363 (Nov. 24, 2004 D. Or)(granting in part motion to strike affidavit filed in support of opposition to motion for summary judgment where statement contained argument and did not correspond with cited record).

Unable to offer evidence to controvert the plain language of the Authorization Agreement or to dispute the testimony of Mr. Boyle, Dinan also attempts to rely on the parties' supposed "underlying rationale" for including Section 2(d)(3) in the Authorization Agreement. Such efforts, however, are unavailing. In opposing Frontenac's Motion, Dinan argues that the parties intended Section 2(d)(3) to cover situations where Frontenac might be placed at a competitive disadvantage if a prospect introduced by Dinan was being auctioned by the prospect's intermediary through a formal sale process. Dinan contends that Section 2(d)(3), therefore, does not apply to acquisitions such as the one at issue here where the acquisition occurs in a privately negotiated or "pre-emptive" transaction.

If a contract is clear and unambiguous, the court must ascertain the intention of the parties from the plain language of the contract, and the contract must be given effect as it is written. *See Macy v. Western Imperial 2000*, No. CV 06-1553-PHX-PGR, 2007 U.S. Dist. LEXIS 61671 (D. Ariz. Aug. 21, 2007), citing *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190, 193 (1977). "Whether or not a contract is ambiguous is a question of law." *Knott v. McDonald's Corp.*, 147 F.3d 1065 (9th Cir. 1998)(citation omitted). Interestingly, Dinan does not contend, and this Court does not find, the contract language at issue to be ambiguous. Section 2(d)(3) of the Authorization Agreement contains no language

---

record for evidence establishing a genuine issue of fact or obtain the missing materials. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988). Moreover, where the party's papers filed opposing summary judgment are "extraordinarily difficult to use" due to their size and poor citation, the court is also not required to scour those papers in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996) (noting opposing papers, due to size and poor citation, "obfuscates rather than promotes an understanding of the facts," and declining to scour those papers or the rest of the record to determine if a genuine issue of triable fact exists). Though under no obligation to do so, this Court has nevertheless undertaken to review those portions of the record offered but uncited by Plaintiff and disposes of the parties' Motions on the merits.

- 7 -

1 rendering the section applicable only when a formal sale or financing process takes place. 2 For this reason, the Court will not consider Plaintiff's assertions regarding the underlying 3 rationale of the provision nor will it look to extrinsic evidence to ascertain the parties' intent 4 with respect to Section 2(d)(3).

5 This Court is similarly unpersuaded by Dinan's assertions regarding the necessity of 6 a written buyers list. Specifically, Dinan asserts that because McGladrey never placed 7 Frontenac on a written buyer list before Dinan's November 7, 2006 introduction of Sigma, 8 Frontenac is not relieved of its obligation to pay Dinan the contingent fee as set forth in 9 Section 2(d)(3) of the Authorization Agreement. (Plaintiff's Memorandum of Law 10 Submitted In Opposition to Defendant Frontenac's Motion for Summary Judgment 11 ["Response"], Doc. #26, pps. 6-7.) As Frontenac's Reply correctly notes, however, Dinan 12 is mistaken in its attempt to superimpose an additional requirement onto Section 2(d)(3) by 13 suggesting that the provision requires Frontenac to be included on a written buyer list. 14 (Defendant's Reply In Support of Motion for Summary Judgment and Response In 15 Opposition to Plaintiff's Cross Motion for Summary Judgment ["Reply"], Doc. #34, pps. 7- 16 8.) This Court does not agree that Section 2(d)(3) of the Authorization Agreement includes 17 such a requirement.

18 The language in Section 2(d)(3) clearly states that in the event Sigma engaged an 19 investment bank and "[Frontenac] would otherwise have been contacted or was in the process 20 of being contacted **(e.g., [Frontenac] was on a potential buyer or investor list)**, no 21 contingent fee will be paid . . ." (Emphasis added.) By virtue of the express use of the 22 abbreviation "e.g." (which translates from Latin as "for example"), this Court finds the 23 Agreement's language and intent to be clear that Frontenac's appearance on a potential buyer 24 or investor list is not a requirement of Section 2(d)(3). Rather, it is merely an example of 25 how Frontenac might demonstrate that it would have been contacted by an investment bank. 26 Even assuming Frontenac did not use this particular method to demonstrate that it would 27 have been contacted by McGladrey, this Court finds sufficient uncontroverted evidence that 28 McGladrey intended to contact Frontenac and, in fact, did so.

1   Similarly misplaced is Dinan's argument that, in order to be relieved of its obligation
2 to pay Dinan a contingent fee, Frontenac was required to give Dinan notice that it was aware
3 of Sigma's availability for acquisition. Dinan argues that the requirement in Section 2(c) of
4 the Authorization Agreement – that Frontenac notify Dinan of prior knowledge of a
5 prospect's availability for acquisition – was intended to apply to any and all situations where
6 Frontenac would be permitted to eliminate Dinan's contingent fee. The Court does not agree.
7 Contrary to Dinan's assertions, it is clear the Authorization Agreement does not impose such
8 a universal notice requirement. The notice requirement is specific to Section 2(c) of the
9 Authorization Agreement which is a stand alone provision of the contract that is separate and
10 distinct from the scenarios contemplated in Section 2(d) which do not require Frontenac to
11 give notice to Dinan. Because this Court finds that Frontenac was relieved of any obligation
12 to pay Dinan a contingent fee under Section 2(d)(3) of the Authorization Agreement, the
13 notice requirement of Section 2(c) is simply inapplicable here.

14   Given the undisputed evidence that (1) Sigma retained McGladrey as an investment
15 bank, and (2) McGladrey intended to contact Frontenac regarding a potential acquisition of
16 Sigma, was engaged in the process of contacting Frontenac regarding a potential acquisition
17 of Sigma, and ultimately did contact Frontenac regarding Sigma, this Court concludes that
18 Frontenac was relieved of any obligation to pay Dinan a contingent fee under Section 2(d)(3)
19 of the parties Authorization Agreement, and summary judgment in favor of Frontenac is
20 appropriate.

21   **B.   DINAN'S CROSS-MOTION FOR SUMMARY JUDGMENT**

22   As a preliminary matter, the Court notes that, on June 25, 2008, it granted the parties
23 joint motion to allow certain limited discovery in order for Plaintiff Dinan to respond to
24 Frontenac's Motion for Summary Judgment. Dinan conducted such discovery and on
25 December 16, 2008 filed not only a response to Frontenac's Motion for Summary Judgment
26 but a Cross Motion for Summary Judgment as well. To the Court's knowledge, however,
27 Dinan never gave Frontenac any indication that it would be filing a Cross Motion for
28 Summary Judgment, and Frontenac now complains that it has not had an opportunity to

1 conduct any discovery. Frontenac states that it did not conduct any discovery during the
2 stipulated discovery period because the purpose of the stipulation was to allow Dinan to
3 conduct the limited discovery it needed to respond to Frontenac's Motion and to avoid
4 having a lengthy and costly discovery period. Frontenac now asks the Court to grant it an
5 additional 60 days to depose Mr. Dinan and Mr. Main pursuant to Fed. R. Civ. P. 56(f)
6 should the Court find any issues raised by the recently produced affidavits of Mr. Dinan and
7 Mr. Main. Finding it to be clear from the record that there was no breach of the parties'
8 Authorization Agreement, the Court denies Frontenac's request as moot for the reasons
9 discussed herein.

10 In response to Frontenac's Motion for Summary Judgment, Dinan argues not only that
11 Frontenac is not entitled to summary judgment but that Dinan is entitled to judgment as a
12 matter of law on the breach of contract claim under a different provision of the Authorization
13 Agreement – Section 2(d)(1). Section 2(d)(1) of the parties' Authorization Agreement states:

> In the event that a Prospect has engaged an investment bank or other intermediary to represent the Prospect and no formal sale or financing process is being run and Client has not received, as of the time Dinan's introduction, any prior notice/memorandum from such investment bank or intermediary that such Prospect is available for sale or that an investment is being sought, then, except as provided below, Dinan's contingent fee will be equal to 100% of the contingent fee as outlined above if client closes a Transaction with such Prospect.

19 (PSOF ¶ 15.)

20 Dinan argues that, as a matter of law, Frontenac is obligated to pay Dinan the
21 $1,960,000 finder's fee under this particular provision of the parties' contract. The Court,
22 however, does not agree that Section 2(d)(1) is even applicable much less the determining
23 provision here given the undisputed facts of this case.

24 Assuming without deciding that the requirements of Section 2(d)(1) were satisfied in
25 the first instance, Section 2(d)(1) by its very terms, states that even if the requirements are
26 satisfied, no contingent fee would be owed to Dinan where, as here, Section 2(d)(3) applies.
27 Specifically, the provision states, "then, **except as provided below**, Dinan's contingent fee
28 will be equal to 100% . . ." (Emphasis added.) The Court finds the Agreement's language

- 10 -

to be clear that Frontenac's obligation under Section 2(d)(1) is subject to certain exceptions – one of which is Section 2(d)(3). Given the Court's previous conclusion that Section 2(d)(3) relieves Frontenac of any obligation to pay Dinan a contingent fee based on the acquisition of Sigma, the Court further concludes that Section 2(d)(1) is not applicable and that Frontenac does not owe Plaintiff a contingent fee under that or any other section of the parties' Authorization Agreement. Plaintiff's Cross Motion for Summary Judgment is therefore denied.

Based on the foregoing findings,

**IT IS HEREBY ORDERED** granting Defendant Frontenac's Motion for Summary Judgment (Doc. #14).

**IT IS FURTHER ORDERED** denying Plaintiff Dinan's Cross Motion for Summary Judgment (Doc. #26).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

**IT IS FURTHER ORDERED** denying Defendant Frontenac's 56(f) request as moot.

**IT IS FURTHER ORDERED** that Plaintiff Dinan's Motion for Leave to File a Restated Amended and Corrected Cross Motion for Summary Judgment (Doc. #32) should be recaptioned as a Notice of Errata. The Court directs the Clerk of the Court to recaption Dinan's filing accordingly and to remove Dinan's Motion for Leave to File a Restated Amended and Corrected Cross Motion for Summary Judgment from the Court's pending motion list.

\ \ \

\ \ \

\ \ \

1  **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File an Addendum (Doc. #40).  Having reviewed Plaintiff's Motion and finding that two of the three proposed supplemental exhibits were previously filed with the Court, the Court concludes that the additional materials would not alter the Court's analysis above, are untimely in any event, and denies the Motion accordingly.

DATED this 18th day of February, 2009.

_____
James A. Teilborg
United States District Judge